

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

―――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――

| | | | |
|---|---|---|---|
| *Kristi O'Malley* | *Mailing Address:* | *Office Location:* | DIRECT: 301-344-4431 |
| *Assistant United States Attorney* | *6500 Cherrywood Lane, Suite 200* | *6406 Ivy Lane, 8th Floor* | MAIN: 301-344-4433 |
| *Kristi.O'Malley@usdoj.gov* | *Greenbelt, MD 20770-1249* | *Greenbelt, MD 20770-1249* | FAX: 301-344-4516 |

October 20, 2014

The Honorable Paul W. Grimm
United States District Judge
United States Courthouse
6500 Cherrywood Lane
Greenbelt, Maryland  20770

     Re:    United States v. Jean Claude Roy
              Criminal No. PWG-13-0249

Dear Judge Grimm:

      On July 22, 2014, this Court ordered the defendant, Jean Claude Roy, to pay restitution in an amount to be determined.  The Court ordered that additional information regarding the restitution amount be provided within 90 days.  For the reasons set forth below, the United States recommends a restitution award for victim D.W. in the amount of at least $264.00; for victim R.C. in the amount of at least $406.00; and for victim K.M. in the amount of at least $264.00.  Even though the government is not currently in a position to seek a greater restitution amount based on information available in the record, the government nonetheless is seeking what restitution amounts can be fairly calculated because restitution is mandatory by statute.

**I.  Restitution is Mandatory**

      Title 18 of the United States Code, Section 1593, states that the court "*shall* order restitution for any offense under this chapter." 18 U.S.C. § 1593(a) (emphasis added).  The defendant, Jean Claude Roy, was convicted of violating Section 1594 (conspiracy to commit sex trafficking), a Chapter 77 offense, and is liable for restitution to the victims of his crime.  The restitution order "shall direct the defendant to pay the victim . . . the full amount of the victim's losses," and those losses are defined to include:

> the *greater* of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. § 201 et seq.).

§ 1593(b)(1), (3) (emphasis added).  Restitution orders are to be issued and enforced pursuant to 18 U.S.C. § 3664, see 18 U.S.C. § 1593(b)(2), which requires a determination of the victim's losses within 90 days after sentencing.  18 U.S.C. § 3664(d)(5).

By conspiring to compel victims D.W., R.C., and K.M. to engage in commercial sex acts, the defendant generated ill-gotten profits for himself, while simultaneously depriving victims D.W., R.C., and K.M. of the value of using their own labor in lawful, gainful employment.  Section 1593(b)(3) of Title 18 defines the victim's losses as the greater of the value rendered to the defendant or the value of the victim's labor.  Below, the United States addresses restitution under both statutory methods.  For reasons described below, the United States recommends that the restitution calculation in this case be based on the victim's lost opportunity to earn a legitimate income.

## II.  Unjust Enrichment Analysis

The evidence at trial demonstrated that throughout the course of the defendant's conspiracy to compel victims D.W., R.C., and K.M. to engage in commercial sex acts, the defendant set the prices for the commercial sex acts, and kept all of the money generated by victims D.W., R.C., and K.M.  Victim D.W. did not engage in commercial sex acts, but did participate in one "outcall" with Ms. Creason that generated profit for the defendant.  The evidence at trial, including the testimony of victim K.M., demonstrated that R.C. and K.M. engaged in multiple commercial sex acts during their time under the defendant's control.

As victim D.W. only participated in a single outcall, the ill-gotten gains generated by the defendant's conspiracy will be less than the value of the D.W.'s labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act.  Further, because the record is not specific regarding the number of commercial sex acts performed by victims R.C. and K.M, under these circumstances, the United States maintains that it is not possible to fairly and reasonably calculate the financial benefit that the defendant received from the commercial sex acts of R.C. and K.M.  As a result, the government respectfully submits that restitution for R.C. and K.M. can be most accurately calculated based on the victims' lost earning opportunity, as set forth below.

## III.  Fair Labor Standards Analysis: Victim's Lost Earning Opportunities

Section 1593(b)(3) calls for restitution in the amount of "the value of the victim's labor" under the FLSA, 29 U.S.C. § 201 et seq., if that amount is greater than the value the defendants derived from the victim.  It cannot be emphasized enough that awarding restitution based on the market "value of labor" will not effectively recompense victims D.W., K.M., and R.C. for the odious and dehumanizing commercial sex acts the defendant conspired to compel – for which no monetary sum could ever properly compensate – but will only compensate the victims for having been denied any opportunity to pursue employment for themselves during the time they were victims of the defendant's criminal conduct.

According to the evidence presented at trial, D.W. departed from Illinois to Maryland on December 12, 2012.  From the moment she boarded the bus to Maryland, she became a victim of

the defendant's conspiracy.  D.W. returned to Illinois on December 15, 2012.  She was victimized by the defendant for a total of four days.  As a result, in addition to the trauma of her experience, D.W. also lost the opportunity to engage in lawful employment in the State of Illinois for four days.  Similarly, the defendant brought R.C. from North Carolina to Maryland on December 17, 2012.  R.C. performed commercial sex acts under the defendant's control until December 24, 2012, when the Defendant chased her from the College Park hotel.  R.C. was victimized by the defendant for a total of seven days, and as a result, the defendant denied R.C. the opportunity to engage in lawful employment in the State of North Carolina for seven days.  K.M. boarded a bus from Illinois to Maryland on December 21, 2012 and remained with the defendant until his arrest on December 25, 2012, for a total of four days.

During the time the defendant conspired to control and exploit D.W., R.C., and K.M. for his profit, the defendant denied victims D.W., R.C., and K.M. any opportunity to seek their own lawful, gainful employment.  Under the FLSA, as adopted in Illinois, employers must pay employees over the age of 18, a minimum wage of $8.25 per hour. See 820 ILL. COMP. STAT. 105, §4(a)(1).  Under the FLSA, as adopted in North Carolina, employers must pay employees the federal minimum wage, currently $7.25 per hour.  See 29 U.S.C. § 206; N.C. Gen. Stat. § 95-25.3.

While the defendant held victims D.W. and K.M. under his control 24 hours a day, a conservative estimate of 8 hours of work per day equates to a total of 32 hours of lost opportunity for lawful, gainful employment (8 hours per day for 4 days equals 32 hours).  By conspiring to compel D.W. and K.M. to generate unlawful profits solely for the defendant's benefit, the defendant deprived the victims of any opportunity to labor lawfully on their own behalf, thus denying them each the opportunity to earn a minimum wage of $264.00 ($8.25 per hour for 32 hours) for their own lawful labor.

As for victim R.C., the defendant denied R.C. the opportunity to labor lawfully on her own for seven days.  Thus, the defendant denied R.C. the opportunity to earn $406.00 ($7.25 per hour for 56 hours).  Pursuant to the mandatory restitution provisions set forth in § 1593(a), the victims are entitled to receive restitution accordingly.

     Undersigned counsel has reached out to trial counsel Michael Montemarano, who indicated that he no longer represents the defendant. Undersigned counsel has also left a voicemail for the defendant's appellate counsel Gary Proctor, but has not yet been able to obtain Mr. Proctor's position on this request.

                                                      Respectfully,

                                                      Rod J. Rosenstein
United States Attorney

                                                      /s/ *Kristi N. O'Malley*
Kristi N. O'Malley
Assistant United States Attorney

                                                      /s/ *William E. Nolan*
William E. Nolan
Trial Attorney
Civil Rights Division, Criminal Section
United States Department of Justice

cc: Gary Proctor (via email)
    Counsel for Defendant